Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WANDA NEWTON,<br><br>       Plaintiff,<br><br>       v.<br><br>SKILLSOFT CORP., PAT KOLEK, JEFF TARR, HELENA FOULKES, RON HOVSEPIAN, LARRY ILLG, MICHAEL KLEIN, KAREN MILLS, PETER SCHMITT, and LARRY SUMMERS,<br><br>       Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Wanda Newton ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Skillsoft Corp. ("Skillsoft" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

1

connection with the proposed merger (the "Proposed Transaction") of Skillsoft and Ryzac, Inc. ("Codecademy").

2. On February 28, 2022, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

3. The Proxy Statement, which recommends that Skillsoft shareholders vote in favor of, among other things, the issuance of Skillsoft common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (i) Codecademy's financial projections; (ii) the financial analyses performed by Skillsoft's financial advisor, Barclays Capital Inc. ("Barclays"), in connection with its fairness opinion; (iii).

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the March 31, 2022 shareholder vote on the Stock Issuance.

**JURISDICTION AND VENUE**

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs

complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and Codecademy is headquartered in New York City.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff is, and has been at all relevant times hereto, an owner of Skillsoft common stock.

10. Defendant Skillsoft provides corporate digital learning services in the United States and internationally. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "SKIL."

11. Defendant Pat Kolek ("Kolek") is Chairperson of the Board of the Company.

12. Defendant Jeff Tarr ("Tarr") is Chief Executive Officer and a director of the Company.

13. Defendant Helena Foulkes ("Foulkes") is a director of the Company.

14. Defendant Ron Hovsepian ("Hovsepian") is a director of the Company.

15. Defendant Larry Illg ("Illg") is a director of the Company.

16. Defendant Michael Klein ("Klein") is a director of the Company.

17. Defendant Karen Mills ("Mills") is a director of the Company.

18. Defendant Peter Schmitt ("Schmitt") is a director of the Company.

19. Defendant Larry Summers ("Summers") is a director of the Company.

20.     Defendants Kolek, Tarr, Foulkes, Hovsepian, Illg, Klein, Mills, Schmitt, and Summers are collectively referred to herein as the "Individual Defendants."

21.     Defendants Skillsoft and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

22.     On December 22, 2021, Skillsoft announced that it had entered into a definitive agreement to acquire Codecademy for approximately $525 million in cash and stock. The press release announcing the Proposed Transaction states, in pertinent part:

**Skillsoft to Acquire Codecademy, a Leading Platform for Learning High-Demand Technical Skills, Creating a Worldwide Community of More Than 85 Million Learners**

*Codecademy's entrepreneurial team, led by founder Zach Sims, to join Skillsoft with focus on accelerating growth in Technology & Developer Business*

*Transaction expected to be immediately and significantly accretive to revenue and bookings growth with substantial cross-selling opportunities*

*Conference call and webcast today at 8:30 a.m. ET*

December 22, 2021 08:10 AM Eastern Standard Time

BOSTON--(BUSINESS WIRE)--Skillsoft (NYSE:SKIL), a global leader in corporate digital learning, today announced it has entered into a definitive agreement to acquire Codecademy, a leading online learning platform for technical skills, for approximately $525 million in cash and stock.

Codecademy is an innovative and popular learning platform providing high-demand technical skills to approximately 40 million registered learners in nearly every country worldwide. The platform offers interactive, self-paced courses and hands-on learning in 14 programming languages across multiple domains such as application development, data science, cloud and cybersecurity. In addition, the Codecademy platform can rapidly expand to deliver new skills at scale, making it highly adaptable to the evolving technical needs of learners and their employers. Codecademy, which was founded in 2011 and is headquartered in New York, is led

4

by a proven entrepreneurial team that has built one of the most admired technical skills learning platforms in the industry.

\*   \*   \*

**Transaction Details**

Under the terms of the agreement, which has been approved by the boards of directors of both companies, Codecademy shareholders will receive total consideration of approximately $525 million. The consideration for the transaction is approximately 40% cash and 60% equity. In connection with the transaction, Skillsoft has secured committed financing from Barclays and Citigroup. The Company expects pro-forma net leverage at closing to be approximately 4x, consistent with Skillsoft's previous statements regarding leverage following a transformative acquisition.

The transaction is expected to close in the first half of 2022, subject to approval by Skillsoft shareholders, the satisfaction of customary closing conditions and the receipt of regulatory approvals, including the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

\*   \*   \*

**Advisors**

Barclays is serving as the exclusive financial advisor to Skillsoft, Citigroup is serving as capital markets advisor and Weil, Gotshal & Manges LLP is serving as legal counsel to Skillsoft.

**About Codecademy**
Codecademy is a leading online learning platform for technical skills, empowering approximately 40 million people worldwide to lead inspiring careers in technology. Codecademy's innovative, scalable approach to online coding education makes it possible for anyone to master the skills needed to succeed in our tech-enabled workforce. Since 2011, learners from more than 150 countries have accessed Codecademy's extensive course offerings on web development, data science, cybersecurity, and more, as well as in-demand programming languages like Python, CSS, and JavaScript. In addition to helping individuals unlock the full power of technology, Codecademy for Business supports companies like General Motors and Kayak as they train and upskill their teams for the future. Codecademy is headquartered in New York City.

**About Skillsoft**
Skillsoft (NYSE:SKIL) is a global leader in corporate digital learning, focused on transforming today's workforce for tomorrow's economy. The Company provides

enterprise learning solutions designed to prepare organizations for the future of work, overcome critical skill gaps, drive demonstrable behavior-change, and unlock the potential in their people. Skillsoft offers a comprehensive suite of premium, original, and authorized partner content, including one of the broadest and deepest libraries of leadership & business skills, technology & developer, and compliance curricula. With access to a broad spectrum of learning options (including video, audio, books, bootcamps, live events, and practice labs), organizations can meaningfully increase learner engagement and retention. Skillsoft's offerings are delivered through Percipio, its award-winning, AI-driven, immersive learning platform purpose built to make learning easier, more accessible, and more effective. Learn more at www.skillsoft.com.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

23. The Proxy Statement omits and/or misrepresents material information concerning: (i) Codecademy's financial projections; (ii) the financial analyses performed by Skillsoft's financial advisor, Barclays, in connection with its fairness opinion; (iii) potential conflicts of interest involving Barclays; and (iv) potential conflicts of interest involving Company insiders.

24. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) The Board's Reasons for the Approval of the Mergers and the Stock Issuance; (ii) Recommendation to Skillsoft's Stockholders; (iii) Opinion of Skillsoft's Financial Advisor; and (iv) Certain Unaudited Forecasted Financial Information.

25. Unless and until the material misstatements and omissions (referenced below) are remedied before the March 31, 2022 shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Codecademy's Financial Projections

26. The Proxy Statement omits material information concerning Codecademy's

financial projections.

27. With respect to Codecademy's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying each set of Codecademy's financial projections; (2) Codecademy's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

28. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Codecademy and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of Codecademy and the combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction and Stock Issuance.

29. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

30. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Barclays' Analyses

31. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Barclays.

32. The Proxy Statement states that, in arriving at its opinion, Barclays "reviewed and analyzed certain operating synergies projected by the management of Skillsoft to result from the Mergers, as approved for Barclays' use by Skillsoft (the "Synergies")." The Proxy Statement, however, fails to disclose the Synergies, including the amount and timing of the potential synergies anticipated by the Company to result from the Proposed Transaction.

33. With respect to Barclays' "*Selected Comparable Company Analysis*" and "*Selected Precedent Transaction Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction Barclays observed in its analyses.

34. The Proxy Statement fails to disclose the following concerning Barclays' "*Discounted Cash Flow Analysis*": (1) all line items underlying Codecademy's projected after-tax unlevered free cash flows for fiscal years 2022 through 2026; (2) the terminal value of Codecademy as of December 31, 2026; (3) Codecademy's projected net operating loss for

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 14, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

fiscal years 2022 through 2026; (4) the individual inputs and assumptions underlying the (i) multiples ranging from 14.0x to 16.0x, and (ii) discount rates of 12.6% to 13.4%; and (5) the value of the Synergies.

35. The valuation methods, underlying assumptions, and key inputs used by Barclays in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Barclays' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

36. Without the information described above, the Company's shareholders are unable to fully understand Barclays' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction and Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Barclays

37. The Proxy Statement omits material information concerning potential conflicts of interest involving Barclays.

38. The Proxy Statement fails to disclose the timing and nature of the past services that Barclays and/or its affiliates provided to Codecademy and/or its affiliates, including the amount of compensation Barclays received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

39. The Proxy Statement provides that "Skillsoft has requested and one of Barclays' affiliates is providing a commitment for the funds necessary to finance a portion of the total consideration and Barclays will receive customary fees in connection therewith." The Proxy Statement, however, fails to disclose the amount of compensation Barclays received or expects to

9

receive for "providing a commitment for the funds necessary to finance a portion of the total consideration."

40. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

41. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

42. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

43. The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

44. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

45. The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

49. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and Stock Issuance.

50. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

12

or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 14, 2022                         Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*